**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Darren Starr

    v.                                  Civil No. 10-cv-437-PB

Cpl. FNU Knierman et al.[1]


**REPORT AND RECOMMENDATION**


Before the court is the complaint (doc. no. 1) filed by pro se plaintiff Darren Starr, an inmate at the New Hampshire State Prison ("NHSP") in Concord, New Hampshire.  The complaint asserts that defendants, all New Hampshire Department of Corrections ("DOC") employees, have violated Starr's rights under the Fourteenth Amendment by returning certain incoming letters, without notifying Starr or providing him with an opportunity to appeal before the letters were returned.  The complaint (doc. no. 1) is before me for preliminary review to identify cognizable claims and to recommend dismissal of any claims upon which no relief can be granted.  See 28 U.S.C. § 1915A; United States District Court for the District of New

---

[1] Defendants include New Hampshire State Prison ("NHSP") mailroom supervisor Cpl. Knierman, whose first name is unknown ("FNU"); Christopher Kench, New Hampshire Department of Corrections Commissioner's Office staff; and NHSP Warden Richard Gerry.

Hampshire Local Rule ("LR") 4.3(d)(2) (magistrate judge is designated to conduct preliminary review of prisoner complaints).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge conducts a preliminary review. The magistrate judge may issue a report and recommendation after the preliminary review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)). In conducting a preliminary review of a pro se complaint, the court construes pro se pleadings liberally to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous

to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, No. 09-2207, 2011 WL 1228768, *9 (1st Cir. Apr. 1, 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Ocasio-Hernández, 2011 WL 1228768 at *9.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a

merely conceivable, case for relief." <u>Sepúlveda-Villarini v. Dep't of Educ.</u>, 628 F.3d 25, 29 (1st Cir. 2010); <u>see</u> <u>Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, ___ U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." <u>Ocasio-Hernández</u>, 2011 WL 1228768 at *9.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." <u>Id.</u>

**Background**

In May and June 2010, nonprisoners sent three letters to Starr that the prison mailroom did not deliver.  The relevant circumstances concerning those letters – identified here as the Morse letter, the scholarship notice, and the Tigchelaar letter -- are described below.

A.   <u>Morse Letter</u>

On or about May 10, 2010, a letter from Joseph Morse, a nonprisoner, arrived at the NHSP, addressed to Starr.  Morse used an address label on the envelope.  The prison refused to accept the letter and returned it to Morse unopened.

Starr learned about the rejection of Morse's letter when he received a follow-up letter several days later.  In the follow-up letter, Morse had included a copy of the outside of the envelope he had used in mailing the May 10 letter, upon which the mailroom staff had written, "No Stickers Allowed."

On May 19, 2010, Starr submitted an inmate request slip, complaining about the lack of notice and chance to object to the rejection of Morse's May 10 letter.  On May 20, 2010, Unit Manager Robert McGrath called Starr into his office to discuss the matter.  McGrath made inquiries regarding the issue and relayed to Starr that the mailroom's policy was that no notice or chance to object had to be given as long as the mailroom returned the letter without opening it.

McGrath forwarded Starr's inmate request slip to the warden.  The warden's response was that the mailroom does not accept letters with stickers, unless the stickers are "pre-printed" return address labels, and that letters with stickers are routinely returned unopened.  The warden further stated that

it is prison policy to provide notice to an inmate whenever mail is opened, scanned for contraband, and rejected, but not when mail is returned unopened.

On June 8, 2010, Starr submitted a "second level" grievance on the issue to the warden.  Starr asserted that he has a First Amendment right to receive mail, and the presence of a sticker on the envelope was an invalid basis for rejecting a letter, as a prison regulation listing the bases upon which mail may be rejected, N.H. Admin. R. Corr. 301.05, does not specifically include "stickers and/or return labels" on the envelope.  Starr further claimed that the Fourteenth Amendment required the prison to provide him with notice and an opportunity to object before incoming mail is returned.

The warden replied to the June 8 grievance on June 10, 2010, citing NHSP Policy and Procedure Directive ("PPD") 5.26(L), which states, in pertinent part, that the prison shall provide notice of a letter's rejection to its "originator."  The warden noted that because Starr was not the originator, he was not entitled to notice under the policy.

On June 15, 2010, Starr appealed the matter to the DOC Commissioner.  Starr asserted that he had suffered a violation of his Fourteenth Amendment right to notice and a chance to object to the rejection of the letter, and that the "no sticker"

policy was not authorized by the N.H. Admin. R. Corr. 301.05 (regarding prison mail procedures).  Christopher Kench, on behalf of the commissioner, denied Starr's grievance, specifically stating that NHSP "policy is not in conflict" with the cited regulation.

B.    Tigchelaar Letter

On June 14, 2010, the prison mailroom received a letter from a nonprisoner, Mirjam Tigchelaar, addressed to Starr.  The mailroom opened the letter, scanned it for contraband, and found that it contained unused scenic postcards.  The mailroom rejected the letter and its contents, deeming the postcards to be a type of contraband ("unused correspondence materials").  The mailroom issued a rejection notice stating that the contents included such contraband, and returned the letter and postcards to Tigchelaar.  Starr received a copy of the rejection form at the time of the letter's return.

Starr grieved the mailroom's failure to provide him with an opportunity to object before the letter was sent back.  Unit Manager McGrath responded to Starr's inmate request slip by stating: "Please review PPD 5.26 and let's talk about it."

Starr sent two grievances to the warden's office thereafter, dated June 15 and July 13, 2010.  When the warden's office failed to respond to either grievance, Starr sent a

follow-up inmate request slip to the warden on August 12, 2010, requesting a response.  On August 17, 2010, Major Fouts replied on the warden's behalf, apologizing for failing to respond earlier to Starr's grievance, which Fouts asserted had been logged in and lost.  Fouts invited Starr to resubmit the grievance to the warden or to Fouts.  Starr apparently chose not to follow up on either option.

In the meanwhile, on July 23, 2010, Starr had elevated the issue directly to the commissioner's office, after explaining that the warden's failure to respond to his grievances should not bar Starr from appealing the issue.  Defendant Kench, on behalf of the commissioner issued an undated response to that grievance, which denied the appeal.  Kench referred Starr generally to PPD 5.26, IV(H)(4).  PPD 5.26, IV(H)(4), states: "Any incoming mail that contains items that are not authorized to be sent through the mail, cannot be checked for contraband without being destroyed or contains unauthorized items will be returned to the sender and logged in the mailroom."

Kench's response also said that PPD 5.26, IV(N), "would not be applicable."  PPD 5.26, IV(N), sets forth the procedures for inmate appeals of packages rejected after the mailroom has forwarded the package to the Literary Review Committee ("LRC") or the Investigations Unit for further review.  Kench's response

indicates that the mailroom staff rejected the Tigchelaar letter without forwarding it to the LRC or the Investigations Unit.

C.   Scholarship Notice

On May 18, 2010, the New Hampshire Charitable Foundation sent a letter to Darren Starr to notify him that he had received a scholarship.  The prison did not deliver that letter to Starr or provide him with any notice of its rejection before returning it to the Charitable Foundation.

When Starr did not receive information from the Charitable Foundation regarding the status of his scholarship application, he asked his mother to make inquiries on his behalf.  On May 28, 2010, Starr's mother learned from the Charitable Foundation that the prison had returned the award letter.  The Charitable Foundation emailed a copy of the letter to Starr's mother, who forwarded it to Starr.  The inside address on the letter contains only Starr's name, the prison's post office box, and the city, state, and zip code for Concord, New Hampshire.

Claiming violations of his right to receive mail and his Fourteenth Amendment due process rights, Starr, on June 3, 2010, submitted an inmate request slip to his unit manager regarding the scholarship award letter.  The unit manager forwarded the inmate request slip directly to the warden, who replied, on June 10, 2010, that he had "already responded to this issue" in

connection with Starr's June 8 grievance of the Morse letter.

Starr raised the issue regarding the scholarship letter again with the warden on June 18, 2010.  Starr reiterated that he had received no notice regarding why the scholarship letter was rejected, and no notice or chance to object before it was returned.  Starr asserted that the letter "was sufficiently addressed to arrive at the prison," and if the mailroom had performed "a simple search of my name via the computer," it would have located Starr.  The warden denied the grievance on June 21, stating that he had previously responded to the same issue.

Starr's June 29 appeal asserted violations of his First and Fourteenth Amendment rights.  Starr objected to the warden's position that "as long as mail is not opened, it can be returned without notice or chance to appeal," and the warden's opinion that "since I am not the originator of the mail, I am not entitled to notice of the rejection."  After noting that the mailroom provided him with no reason for returning the scholarship notice letter, Starr asserted that neither the letter's content (a notification of a scholarship award), nor the lack of an inmate number in the address, justified its return; a scholarship award does not raise security concerns, and the mailroom could use his name to locate him in the prison

system.

When Starr did not receive any response to the June 29 grievance to the commissioner, he sent, on August 12, 2010, a follow-up inmate request slip to the commissioner.  Kench, on behalf of the commissioner, replied to that request.  Kench repeated the response that he had given Starr regarding the Tigchelaar letter:  "My response was for you to review NH DOC PPD 5.26, IV(H)(4)," and section "IV(N) would not be applicable here."

D.   Claims

Citing 42 U.S.C. § 1983, which provides a cause of action for individuals to sue state actors for violating federal rights, Starr asserts the following claims[2]:

1.   Defendants violated Starr's right to due process under the Fourteenth Amendment by rejecting the Morse letter without providing Starr with notice of the rejection and an opportunity to object before returning the letter.

2.   Defendants violated Starr's right to due process under the Fourteenth Amendment by rejecting the scholarship notice letter without providing any statement of the reasons why that letter had been rejected, or notice of its rejection and an opportunity to object before the letter was returned.

_____

[2]The claims, as identified herein, will be considered to be the claims raised in the complaint for all purposes.  If Starr objects to the claims as identified here, he must do so by filing a timely objection to this Report and Recommendation or by properly moving to amend his complaint.

3.    Defendants violated Starr's right to due process under
      the Fourteenth Amendment by failing to afford him an
      opportunity to object before the Tigchelaar letter was
      returned.

Although Starr asserted violations of his First Amendment

rights in his administrative grievances, he has chosen to pursue

only due process claims in this court.  Starr seeks damages, a

declaratory judgment, and injunctive relief.  Starr specifically

requests a declaratory judgment that defendants violated his

right to due process, and seeks an order directing defendants to

provide him with notice and an opportunity to object whenever

mail is rejected, before the letters are returned.

**Discussion**

I.   Due Process

The Fourteenth Amendment provides that states shall not

"deprive any person of life, liberty, or property, without due

process of law."  U.S. Const. amend. XIV, § 1.  Starr has

invoked the guarantee of procedural due process in contending

that the prison must provide him with notice and an opportunity

to be heard prior to returning letters addressed to him.

A.   Constitutionally Protected Liberty Interest

A court evaluating a due process claim must first determine

whether the plaintiff has been deprived of a constitutionally

protected interest in life, liberty, or property.  See Pérez-

Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008) ("The test for a procedural due process violation requires the plaintiffs to show first, a deprivation of a protected . . . interest, and second, a denial of due process.").

Here, Starr contends that he suffered a deprivation of a protected interest when the prison sent back the Morse letter, the scholarship notice, and the Tigchelaar letter.  Considering a case involving prison officials' rejection and return of mail sent by a lawyer to his client in prison, the Eighth Circuit concluded that the "case law is clear that an inmate has a right to procedural due process – including notice – whenever any form of correspondence addressed to that inmate is rejected."  Bonner v. Outlaw, 552 F.3d 673, 678 (8th Cir. 2009).  The Eighth Circuit further explained:

> In Procunier v. Martinez, the Supreme Court held "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."

Id. at 676 (quoting Procunier v. Martinez, 416 U.S. 396, 418 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)).

B.   Adequacy of Prison Process

Here, the prison's failure to deliver certain letters to
Starr implicated his liberty interest in receiving incoming
mail, triggering in this case an inquiry into whether the
procedures employed by the prison in rejecting and returning the
Moore, Tigchelaar, and scholarship notice letters were adequate.
See Bonner, 552 F.3d at 678; see also Zinermon v. Burch, 494
U.S. 113, 125-26 (1990) ("the deprivation by state action of a
constitutionally protected interest . . . is not in itself
unconstitutional; what is unconstitutional is the deprivation of
such an interest without due process of law" (emphasis in
original) (internal quotations and citations omitted)).

In undertaking this analysis, the court applies the
standard set forth in Turner v. Safley, 482 U.S. 78, 89 (1987).
Prison regulations burdening inmate constitutional rights pass
muster if they are "reasonably related to legitimate penological
interests." Id.  The Turner test applies in evaluating whether
the policy of returning unopened mail to the prisoner without
prior notice or an opportunity to object is reasonably related
to a legitimate, penological purpose.  See Avery v. Powell, 806
F. Supp. 7, 12 (D.N.H. 1992) (Turner applies to due process
challenges to prison regulations concerning incoming mail); see
also Sikorski v. Whorton, 631 F. Supp. 2d 1327, 1348 (D. Nev.

2009) (applying Turner test in evaluating due process challenge
to prison's policy of returning unopened mail without prior
notice to inmates).

The Supreme Court has held that minimal procedural
protections must be provided when a prisoner's mail is not
delivered.  See Procunier, 416 U.S. at 418.  The minimum
safeguards endorsed by the Court are:  (1) notifying the inmate
that mail was withheld or rejected; (2) allowing the inmate a
reasonable opportunity to protest the decision; and (3)
referring complaints to a prison official other than the one who
seized the mail.  See id. at 418-19; Lena v. DuBois, 19 F.3d
1427 (unpublished table decision), 1994 WL 99940, *1 (1st Cir.
Mar. 23, 1994).

The Court has not held that those minimal procedural
protections must include prior notice.  See Sikorski, 631 F.
Supp. at 1350 n.17 (citing Procunier, 416 U.S. at 418).  Notice
after the fact can be sufficient.  See Sikorski, 631 F. Supp. 2d
at 1348.  A prison policy of providing a list of reasons for the
letters' rejection only after the inmate grieves the issue has
been upheld where the prison notified the sender regarding the
reason for a letter's return, the sender repackaged the letter
in conformity with prison regulations, and the prisoner received
notice after the fact regarding the reasons for the letters'

return.  See, e.g., id. (upholding prison policy of returning letters, unopened, without notice to prisoner, if sender put adhesive tape onto envelope); cf. Lena, 1994 WL 99940, *1 (prisoner who was not provided with prompt written notice of book's return, but who was "eventually so notified" and was able to pursue appropriate appeal to superintendent did not suffer violation of right to due process).  "Because due process is an infinitely flexible concept, there is no infallible test for determining the adequacy of notice in any particular situation." Gonzalez-Gonzalez v. United States, 257 F.3d 31, 36 (1st Cir. 2001).  Whether the notice given was reasonable depends on the circumstances of the individual case.  See id.

In evaluating whether a challenged prison policy is valid, courts should consider the four factors that make up the test under Turner: (1) whether the regulation has a "valid, rational connection" to a legitimate penological objective, (2) "whether alternative means are open to inmates to exercise the asserted right," (3) "what impact an accommodation of the right would have on guards and inmates and prison resources," and (4) "whether there are 'ready alternatives' to the regulation." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (citing Turner, 482 U.S. at 89-91).  In applying these factors, this Court must accord prison administrators significant deference in defining

legitimate goals for the corrections system, and for determining
the best means of accomplishing those goals.  See Overton, 539
U.S. at 132; Pell, 417 U.S. at 826-27.

   C.   Morse Letter (Claim 1)

   Here, the prison told the sender (Morse) that the letter
would not be delivered because there were stickers on the
envelope.  Morse told Starr about the letter's rejection and the
prison's "no sticker" policy in a follow-up letter, sent to
Starr without address labels.  Starr, in turn, filed a grievance
challenging the "no sticker" policy and the lack of notice and
an opportunity to object before the letter had been returned.
The warden confirmed in responding to the grievance that the
sticker policy precluded the mailroom from accepting mail with
stickers and otherwise denied Starr's grievance.  Thus, Starr
received notice, after the fact, regarding the reasons for and
the fact of the return of the Morse letter.  He was able to
challenge the "no sticker" and "no notice" policies at issue in
grievances filed with the warden and in an appeal to the
commissioner.

   Considering similar prison policies, and applying the
Turner test, the Sikorski court concluded that the policies were
valid.  See Sikorski, 631 F. Supp. 2d at 1348.  Finding no error
in the Sikorski court's analysis of essentially the same issues,

17

this court similarly finds here that there was no due process violation with respect to the Morse letter, as explained below.

As to the first Turner factor, regarding whether the mail regulation is rationally connected to a legitimate penological objective, courts have concluded that the policy of returning unopened, noncompliant incoming mail to the sender without prior notice to the inmate is rationally related to the content neutral goal of conserving scarce resources, which in turn bears on prison security.  See Sikorski, 631 F. Supp. 2d at 1348. Specifically, documenting the rejection of mail and providing notice to the inmate every time a letter is returned unopened because it contained stickers or labels would drain resources away from the security task of scanning deliverable mail for contraband.  See id.

As to the second Turner factor, regarding whether an inmate has an alternative means to exercise the right at issue (namely, the right to receive notice of the reasons for a letter's rejection and an opportunity to be heard at a meaningful time and in a meaningful manner), the lack of prior notice regarding the bases for a specific letter's rejection does not mean that a prisoner has no opportunity to challenge a letter's return.  The prison marked Morse's envelope with the reason for the mail's rejection, "No stickers allowed."  Starr learned from Morse that

the letter was not delivered because it had stickers on it, and Starr was able to challenge the sticker policy.  The warden confirmed the existence of a policy against stickers.  Such notice of the reason for the Morse letter's return, triggered when Morse notified Starr and Starr in turn grieved the issue, provided Starr with an alternative means of exercising his rights.  See Lena, 1994 WL 99940, at *1 (no due process violation where prison failed to provide prompt, written notice of return of book but prisoner eventually received notice and had opportunity to appeal reason for book's return); see also Sikorski, 631 F. Supp. 2d at 1350 n.17 (citing McGann v. Stock, 884 F.2d 582 (9th Cir. 1989), in asserting that inmate's procedural due process rights are not violated when inmate mail is returned before inmate could appeal, because sender could resend mail if inmate prevailed upon appeal).

As to the third and fourth Turner factors, regarding the impact on the prison of accommodating Starr's interest in receiving mail and the availability of alternatives to the policy, the record here, like that in Sikorski, suggests that providing notice to an inmate before mail is returned unopened to the sender would place a "significant" burden on prison resources.  Sikorski, 631 F. Supp. 2d at 1349.  While the record

does not permit the Court to quantify that burden, it does not appear to be de minimis.

Starr has not proposed any alternative to the current policy, apart from suggesting that the mailroom retain undeliverable mail, contact the prisoner, and give the prisoner a chance to challenge the decision not to deliver the mail. Starr has not alleged facts to indicate that his proposal would not unduly burden institutional resources.  Therefore, the Court concludes that Starr has failed to state a claim that the prison policy at issue is not reasonably related to a legitimate penological purpose.  Accordingly, the court should dismiss the due process claim regarding the Morse letter, identified as Claim 1 above.[3]

B.   Scholarship Notice Letter (Claim 2)

Starr's claim regarding his scholarship notice letter is factually similar to his claim regarding the Morse letter.  In

---

[3]Starr's decision not to assert a First Amendment claim challenging the validity of the underlying "no sticker" policy renders it unnecessary to consider whether that policy's impact on his right to receive mail is reasonably related to a legitimate penological interest.  The court notes, however, that courts evaluating similar policies found a rule against stickers on incoming mail reasonably related to a legitimate penological interest in safety and security, given the risk that stickers can be used to carry drugs or other contraband through the mail. See Sikorski, 631 F. Supp. 2d at 1348; Jeffries v. Snake Riv. Corrs.-Or., No. 05-1851-JO, 2008 WL 3200802, *4 (D. Or. Aug. 4, 2008), aff'd, 362 Fed. App'x 587 (9th Cir. Jan. 11, 2010).

20

both cases, a letter addressed to Starr was returned unopened, and Starr did not receive notice or an opportunity to object before the letter was returned.  The facts differ only in Starr's allegation that the prison did not provide either he or the sender with a list of reasons why the scholarship letter was returned as undeliverable.  That difference does not affect this court's recommendation as to the proper disposition of Claim 2. Applying the Turner test yields the same result, and the difference in the type of notice provided after the fact to Starr does not provide any further basis for finding an actionable due process claim, for reasons set forth below.

As explained above, the minimum procedural requirements that must be provided to an inmate when mail is rejected include notice and a reasonable opportunity to protest the decision. See Procunier, 416 U.S. at 418.  Whether the notice given was reasonable depends on the circumstances of the individual case. See Gonzalez-Gonzalez, 257 F.3d at 36.

Here, Starr told prison officials that the letter at issue had been rejected; he specifically asked prison officials to provide him with a list of reasons for that rejection; he asserted that the lack of notice violated his due process rights; and he ultimately contended, in his grievance to the warden and in the appeal to the commissioner, that neither the

lack of an inmate identification number in the address nor the contents of the letter justified its rejection.  The warden replied that he had already responded to the issue, apparently referring to Starr's complaint that he had not received notice when the Morse letter was returned.

Kench's response to Starr's request for further information similarly did not include a list of reasons why the scholarship letter had been rejected.  Rather, Kench reiterated the same answer he had given as to the Tigchelaar grievance, which suggests that Kench was possibly confused about which grievance or letter was at issue.

"Only if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983."  Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) (prison officials' negligence in failing to provide notice of rejection of incoming mail was not actionable under section 1983).  Here, prison officials told Starr that, as a matter of policy, inmates do not receive prior notice when letters are returned unopened.  Starr does not allege facts showing, however, that prison officials, when asked in the grievance process, as a matter of policy or practice fail to provide a list of reasons why a letter was rejected.  The exhibits attached to the complaint belie such an assertion, as

22

the exhibits include substantive responses to Starr's inmate request slips, grievances, and appeals.  Starr has thus failed to allege facts showing that it was a prison policy, and not negligence that caused prison officials to fail to advise him of the reasons for rejecting the scholarship letter.  Therefore, the court should dismiss the due process claim relating to the scholarship letter.[4]

    E.    Tigchelaar Letter (Claim 3)

    Starr received notice that the prison had rejected the Tigchelaar letter because it contained blank postcards, deeming

---

[4]The record suggests one reason why the scholarship letter may have been returned:  PPD 5.26(H)(1), which provides that letters lacking an inmate identification number in the address will be returned unopened.  Starr challenged the validity of that rule as applied to him in his grievance to the warden and in his appeal to the commissioner but did not challenge the underlying decision to return the scholarship letter here.  The court, therefore, has no occasion to consider the validity of PPD 5.26(H)(1) here.  This court, however, has recently considered a First Amendment challenge to PPD 5.26(H)(1), as well as a due process challenge to the prison's failure to provide notice to the inmate when mail lacking an inmate identification number was returned to the sender.  See Novosel v. Wrenn, No. 10-cv-165-PB (doc. no. 27) (D.N.H. Feb. 16, 2011) (Report and Recommendation on motion for preliminary injunction, recommending that motion be denied).  In that case, this court recommended that the District Judge deny plaintiff's motion for a preliminary injunction on the ground that plaintiff failed to show a likelihood of success on the merits of any claim at issue, including the plaintiff's challenge to the mail policy regarding inmate numbers.  See id. at 24-29.  The District Court has not yet ruled on whether to accept the magistrate judge's recommended disposition.

the postcards contraband (classified as "unused correspondence materials").  Although he received a copy of the rejection notice sent to Tigchelaar, Starr did not have an opportunity to object before the letter and its contents were returned.

For reasons set forth above as to the Morse letter (Claim 1), Starr's due process claim as to the Tigchelaar letter is not viable.  The court should therefore dismiss the due process claim relating to Starr's inability to object prior the return of the Tigchelaar letter.  See Lena, 1994 WL 99940, at *1; see also Sikorski, 631 F. Supp. 2d at 1350 n.17 (citing McGann, 884 F.2d 582).[5]

### Conclusion

For the foregoing reasons, the court should dismiss all claims asserted in the complaint (doc. no. 1).  Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d

---

[5]Starr's failure to challenge the policy of rejecting mail including unused correspondence materials makes it unnecessary for this court to evaluate that policy under Turner.

554, 564 (1st Cir. 2010); <u>United States v. Lugo Guerrero</u>, 524

F.3d 5, 14 (1st Cir. 2008).

_____
Landya McCafferty
United States Magistrate Judge

June 21, 2011

cc:  Darren Starr, pro se

LBM:nmd